IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| "MAKIKO D." and "JEFFREY D.", Individually, and as Guardians Ad Litem for "JAKE D.", an incompetent minor, | ) ) ) ) | CIVIL NO.  06-00189 JMS/BMK |
| | ) ) | ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' |
| Plaintiffs, | ) ) ) | MOTION FOR DECLARATORY RELIEF |
| vs. | ) ) | |
| STATE OF HAWAII, | ) ) | |
| Defendant. | ) ) ) | |
| _____ | ) | |

ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS'
MOTION FOR DECLARATORY RELIEF

I. INTRODUCTION

Plaintiffs Makiko D. and Jeffrey D. individually, and as Guardians Ad

Litem for their son Jake D. (collectively "Plaintiffs"), seek a declaration that the

application of Hawaii Revised Statutes ("HRS") § 302A-443 as amended is

unlawful as applied to their request for reimbursement of Jake's special education

and related services.  The Hearings Officer ruled that the ninety-day statute of

limitations contained in HRS § 302A-443(a)(2) barred Plaintiffs' claim for

reimbursement under the Individuals with Disabilities Education Act ("IDEA"),

20 U.S.C. § 1400 et seq.  Plaintiffs filed a Complaint and demand for jury trial on

April 7, 2006.[1]  On October 31, 2006, Plaintiffs filed their motion for declaratory relief.  A hearing was held on December 4, 2006.  Based on the following, the court GRANTS IN PART and DENIES IN PART Plaintiffs' motion.

## II.  <u>BACKGROUND</u>

### A.    Factual Background:  Jake D.

Jake is an autistic six-year old eligible for services under the IDEA. In fall 2004, Plaintiffs withdrew Jake from his public preschool because he was not getting regular speech services as provided in his individualized education plan ("IEP").  Plaintiffs enrolled him at Kamaaina Kids (a private preschool) and hired a private autism consultant, private speech pathologist, and intensive instructional service coordinators.  In December 2004, Plaintiffs filed a request for a due process hearing.  The Hearings Officer's April 25, 2005 decision concluded that the State of Hawaii Department of Education ("DOE") failed to provide a free appropriate public education ("FAPE") for the 2004-2005 school year and ordered reimbursement for expenses related to Jake's preschool, skills training services to

---

[1] The original Complaint does not purport to arise under the IDEA, but is instead "a civil action arising under Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131-12165 & 12181-12189 and § 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794."  Complaint at ¶ 1.  Plaintiffs filed an Amended Complaint on April 13, 2007, specifying that the case arises under the IDEA, as well as Title II of the ADA and § 504 of the Rehabilitation Act.  The court received the Administrative Record on Appeal ("ARA") on December 29, 2006 and treats the matter as an IDEA appeal pursuant to 20 U.S.C. § 1415(i)(2).

implement Applied Behavioral Analysis ("ABA") in the classroom, Intensive

Instructional Service Consultant ("IISC") services, a private autism consultant

from the Center for Autism and Related Disorders ("CARD"), and a private speech

pathologist (collectively, "Jake's related services").  Administrative Record on

Appeal ("ARA") at 91-92.  Pursuant to the Hearings Officer's April 2005

decision, Jake attended Kamaaina Kids preschool from August 23, 2004 to June 8,

2005 at public expense.

Jake's 2004-2005 school year program ended on June 8, 2005 and he

was too old to remain in preschool for the 2005-2006 school year.  On June 2,

2005, the mother wrote to the DOE that Plaintiffs wanted to continue the program

ordered by the April 25, 2005 decision and that Jake would not be attending a

DOE school.  Ex. 3 attached to Decl. of Makiko D.  The DOE made an offer of

FAPE on July 22, 2005; included with the IEP was a copy of the DOE's

Procedural Safeguards Notice.  On August 2, 2005, Jake's mother sent a letter to

Glen Miyasato, principal at Queen Kaahumanu School, stating that Plaintiffs were

rejecting the July 2005 placement at Queen Kaahumanu and placing Jake at

Kaimuki Christian School ("KCS"), a private school in Honolulu.  ARA at 37.

Miyasato responded to mother's letter on August 4, 2005 and stated,

"your decision to place your son at Kaimuki Christian School constitutes a

3

unilateral placement.  This means that the D.O.E. will not be reimbursing you for the costs for tuition and related services."  ARA at 38.  Included with the letter was a copy of the Procedural Safeguards Notice and a due process hearing request form.  The Procedural Safeguards Notice states in a section entitled "Requirements for Parents Enrolling Their Children in Private Schools or Facilities at Public Expense," that:

> The Department is not required to pay for the costs of education, including special education and related services, for a student with a disability at a private school or facility if the Department made a free appropriate public education available to the student and the parents chose to place the student in the private school.  The student will be included in the population of students with a disability voluntarily enrolled by their parents in private schools.  Decisions about the services to be provided to students with a disability voluntarily enrolled in private schools/facilities will be made by the Department after consultation with representatives of private school/facility students with a disability.
>
> If a parent disagrees with the Department regarding the availability of a free appropriate education in the public schools and has questions regarding the financial responsibility of the private placement, the parent may request a due process hearing.  A hearing must be requested for reimbursement of the costs of private placement within ninety (90) days of the parent's initial unilateral enrollment of the student in the private school or facility.

ARA at 43.  Elsewhere, under the heading "Opportunity to Initiate Due Process Hearings," the Procedural Safeguards Notice states:

4

> A parent or the Department has the right to request a due process hearing regarding the identification, evaluation, or educational placement of the student, or the provision of a free appropriate public education to the student.  A parent or the department must request an impartial due process hearing within 2 years of the date the parent or Department knew or should have known about the alleged action that forms the basis of the request for a due process hearing.  The timeline to request a due process hearing will not apply to a parent if the parent was prevented from requesting the hearing due to --
> - specific misrepresentations by the Department that it had resolved the problem forming the basis of the complaint; or
> - the Department's withholding of information from the parent that was required by the IDEA to be provided to the parent.

ARA at 46.  According to Plaintiffs, "[b]ased on the language of the Procedural Safeguards Notice for Parents and Students (the "Notice") sent to us on August 4, 2005, we understood that we were required to file our request within two years of June 9, 2005, which we did."  Decl. of Makiko D. at ¶ 9.  Plaintiffs filed their request for a due process hearing on December 22, 2005.  ARA at 3.  In the hearing request, Plaintiffs "seek continued private placement . . . and will seek continued DOE reimbursement for this placement" and invoke the "'stay put' provision of the IDEA."  ARA at 3-4.

On March 10, 2006, the DOE filed a motion to dismiss and a hearing on the motion was held on March 17, 2006.  On March 29, 2006, the Hearings

Officer granted the Defendant's motion to dismiss with respect to Plaintiffs'

request for reimbursement, but denied the motion with regard to whether the July

2005 IEP provided a FAPE.  ARA at 137.

The instant motion for declaratory relief arises from the March 29,

2006 decision ("Decision").  In the Decision, the Hearings Officer concluded that

the Plaintiffs' request for a due process hearing was untimely under HRS § 302A-

443(a)(2), because it was filed more than ninety days after the parents unilaterally

placed Jake at KCS.  Plaintiffs were granted leave to appeal the March 29, 2006

Decision.[2]  On April 7, 2006, Plaintiffs filed their Complaint with the court.  On

October 31, 2006, Plaintiffs filed a motion for declaratory relief.  Defendant filed

its opposition on November 16 and Plaintiffs replied on November 27, 2006.

Plaintiffs seek a declaration that Act 158, which amended HRS

§ 302A-443(a)(2), is unlawful as applied.  In support of their motion, Plaintiffs

argue:  (1) Act 158 was unlawfully applied retroactively, which is a violation of

due process and equal protection; (2) the DOE did not comply with notice

requirements; (3) equitable doctrines toll the statute of limitations; and (4) the

IDEA's "stay put" provision applies and was violated by the DOE.  Based on the

_____

[2] As a result, the Hearings Officer has not held a hearing on whether the July 2005 IEP
offered Jake a FAPE.

6

following, the court GRANTS in part and DENIES in part Plaintiffs' motion.  The court also REMANDS the "stay put" determination to the Hearings Officer.

## B.    Legal Background:  The IDEA

The IDEA requires states to develop procedures to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education ("FAPE").  20 U.S.C. § 1415(a).  These procedures include an opportunity to present complaints relating to the identification, evaluation, or educational placement of a child, as well as an opportunity to contest the school district's contention that it has provided a FAPE to that child.  20 U.S.C. § 1415(b)(6).  When a complaint is made pursuant to § 1415(b)(6), "the parents or the local educational agency involved in such complaint shall have an opportunity for an impartial due process hearing."  20 U.S.C. § 1415(f)(1)(A).  The burden of proof in an administrative hearing is placed upon the party seeking relief.  *Schaffer v. Weast*, 546 U.S. 49, 126 S. Ct. 528, 537 (2005).  An aggrieved party can thereafter appeal the hearing officer's determination to a federal district court.  20 U.S.C. § 1415(i)(2)(A).  The IDEA requires that the court:

(i)  shall receive the records of the administrative proceedings;

> (ii)  shall hear additional evidence at the request of a party; and
>
> (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.

20 U.S.C. § 1415(i)(2)(C).  The burden in this proceeding is on the Plaintiffs, the party challenging the administrative ruling.  *Seattle Sch. Dist., No. 1 v. B.S.*, 82 F.3d 1493, 1498 (9th Cir. 1996) ("As the party challenging the administrative ruling, the School District . . . had the burden of proof in district court.").

## III.  ANALYSIS

### A.     Hawaii's Ninety-Day Statute of Limitations

Plaintiffs seek a declaration that HRS § 302A-443(a)(2) is unlawful as applied.  The Hearings Officer ruled that Plaintiffs' request for a due process hearing was untimely under HRS § 302A-443(a)(2) because it was filed more than ninety days after Jake's unilateral placement at KCS.  The court concludes that the statute's ninety-day limitations period was lawfully applied in this case with respect to Jake's private school tuition at KCS, but not with respect to Plaintiffs' request for reimbursement of Jake's related services.

Act 158, effective June 24, 2005, amended HRS § 302A-443, which now provides in pertinent part:

(a) An impartial hearing may be requested by any parent or guardian of a child with a disability, or by the department, on any matter relating to the identification, evaluation, program, or placement of a child with a disability; *provided that the hearing is requested*:

(1) Within two years of the date the parent, guardian, or department knew or should have known about the alleged action that formed the basis of the request for a hearing; and

(2) Notwithstanding paragraph (1), *within ninety days of a unilateral special education placement, where the request is for reimbursement of the costs of the placement.*

(Emphasis added.)  Prior to June 24, 2005, a parent had two years in which to file a request for impartial hearing to seek reimbursement of private placement.  *See* 20 U.S.C. § 1415(f)(3)(C) ("A parent or agency shall request an impartial due process hearing within 2 years . . . or, if the State has an explicit time limitation for requesting such a hearing under this subchapter, in such time as the State law allows.").

The IDEA requires the DOE to "establish and maintain procedures . . . to ensure that children with disabilities and their parents are guaranteed procedural safeguards with respect to the provision of a free appropriate public education[.]"  20 U.S.C. § 1415(a).  Based on the IDEA and various Hawaii regulations, United States District Court Judge David Alan Ezra concluded that the DOE could not invoke HRS § 302A-443 to shorten the limitations period

(from two years to ninety days) absent actual notice to a student's parents.  *See Jaren L., by and through his mother, Shanelle L. v. Dep't of Educ., State of Hawaii*, Civ. No. 06-00024 DAE-LEK (D. Haw. May 1, 2006).  The court agrees with Judge Ezra's analysis and conclusion.  *See Blake C., by and through his mother, Tina F. v. Dep't of Educ., State of Hawaii*, Civ. No. 06-00335 JMS-KSC (D. Haw. Sept. 12, 2006).  *See also Dep't of Educ. v. Carl D.*, 695 F.2d 1154, 1156-58 (9th Cir. 1983) (discussing the importance of notice to parents where a short statute of limitations applies); *R.R. v. Fairfax County Sch. Bd.*, 338 F.3d 325, 331 (4th Cir. 2003) ("Courts adopting very short limitations periods have often imposed notice requirements to make limitations periods . . . consistent with the IDEA.").

Consequently, Plaintiffs had ninety days from the date on which they received actual notice of the ninety-day limitations period in which to file their request for an impartial hearing.[3]  The court next turns to whether Plaintiffs received the required notice under the IDEA.

**B.  The Procedural Safeguards Notice**

The IDEA's requirements are specific:

---

[3] The record shows that the Plaintiffs received the procedural safeguards notice with the July 22, 2005 IEP and again on August 4, 2005 with Principal Miyasato's letter.

The procedural safeguards notice shall include a full explanation of the procedural safeguards, written in the native language of the parents (unless it clearly is not feasible to do so) and written in an easily understandable manner, available under this section and under regulations promulgated by the Secretary relating to--

    (A) independent educational evaluation;

    (B) prior written notice;

    (C) parental consent;

    (D) access to educational records;

    (E) the opportunity to present and resolve complaints, including--

        (i) the time period in which to make a complaint;

        (ii) the opportunity for the agency to resolve the complaint; and

        (iii) the availability of mediation;

    (F) the child's placement during pendency of due process proceedings;

    (G) procedures for students who are subject to placement in an interim alternative educational setting;

    (H) requirements for unilateral placement by parents of children in private schools at public expense;

    (I) due process hearings, including requirements for disclosure of evaluation results and recommendations;

    (J) State-level appeals (if applicable in that State);

    (K) civil actions, including the time period in which to file such actions; and

    (L) attorneys' fees.

20 U.S.C. § 1415(d)(2).  The Procedural Safeguards Notice must be written "in an easily understandable manner."  *Id.*  Under the relevant regulations, the Procedural Safeguards Notice must include a full explanation of all of the procedural

safeguards available relating to the "[o]pportunity to present complaints to initiate due process hearings."  34 C.F.R. § 300.504(b)(5) (2006).[4]

Plaintiffs argue that they did not receive notice clearly informing them of the new ninety-day limitations period and that the Procedural Safeguards Notice is contradictory and inconsistent.  The court concludes that Plaintiffs did not receive the required notice with respect to requesting a hearing for reimbursement of Jake's related services, but did receive the required notice as to reimbursement for the KCS tuition.

### 1.     *Hearing Request for Reimbursement of Jake's Related Services*

The Procedural Safeguards Notice states in a section entitled "Requirements for Parents Enrolling Their Children in Private Schools or Facilities at Public Expense," that:

> *The Department is not required to pay for the costs of education, including special education and related services, for a student with a disability at a private school or facility if the Department made a free appropriate public education available to the student and the parents chose to place the student in the private school.*  The student will be included in the population of students with a disability voluntarily enrolled by their parents in private schools.  Decisions about the services to be provided to students with a disability voluntarily

---

[4] The Hawaii Administrative Rules ("HAR") require that the Procedural Safeguards Notice include a full explanation of all of the procedural safeguards relating to the "[o]pportunity to initiate due process hearings[.]"  HAR § 8-56-69(b)(5).

enrolled in private schools/facilities will be made by the Department after consultation with representatives of private school/facility students with a disability.

If a parent disagrees with the Department regarding the availability of a free appropriate education in the public schools and has questions regarding the financial responsibility of the *private placement*, the parent may request a due process hearing. *A hearing must be requested for reimbursement of the costs of private placement within ninety (90) days of the parent's initial unilateral enrollment of the student in the private school or facility.*

ARA at 43 (emphasis added).  The first portion discusses the "costs of education, including special education and related services" for students whose "parents chose to place the student in a private school."  The terminology in the last sentence excerpted above differs; it does not refer to the "costs of education, including special education and related services," but instead addresses the "costs of private placement."  Although the notice identifies the "costs of education" as specifically including "special education and related services," the "costs of private placement" are not further defined.

The use of different terms creates some confusion.  The notice reads, "A hearing must be requested for reimbursement of the costs of private placement within ninety (90) days of the parent's initial unilateral enrollment of the student in the private school or facility."  The notice does not say that "a hearing must be

requested for reimbursement of the costs of education, including special education and related services."

Read in light of the entire provision, the phrase "costs of private placement" is reasonably understood as the cost of placing the student in a private school or facility (i.e., private school tuition).  Because the operative time frame in this portion of the notice is the date of the child's enrollment in the "private school or facility," it is reasonable to conclude the "costs of private placement" refers to the costs of private school tuition and does not include the cost of the student's "related services."

To add to the confusion, another section entitled "Opportunity to Initiate Due Process Hearings," describes a two-year statute of limitations for requesting hearings that do not involve requests for reimbursement.

The court concludes that the notice is not written "in an easily understandable manner" as required by 20 U.S.C. § 1415(d)(2); the portions that address requests for reimbursement hearings are not entirely clear regarding the costs of "related services" and "private placement."[5]  Plaintiffs, therefore, did not

---

[5] Even if § 1415(d)(2) did not require an "easily understandable" notice of the statute of limitations, "[c]ourts adopting very short limitations periods have often imposed notice requirements to make limitations periods borrowed from state law consistent with the IDEA." *R.R. v. Fairfax County Sch. Bd.*, 338 F.3d 325, 331 (4th Cir. 2003).  Whether under § 1415(d)(2) or a court-imposed notice requirement, any notice given must be "easily understandable."  *See*

(continued...)

receive the required notice with respect to the ninety-day limitations period for requesting reimbursement for Jake's "related services."

The court cautions that its decision should not be broadly construed. The holding is a narrow one, applying only to related services because the Procedural Safeguards Notice did not set forth "in an easily understandable manner" the time frame for requesting a hearing for reimbursement of "related services" as opposed to "private placement" and the Plaintiffs were not represented by counsel.[6]  The court GRANTS Plaintiffs' motion with respect to the claim for reimbursement of Jake's related services; the ninety-day statute of limitations will not bar their request for a due process hearing because Plaintiffs did not get the required notice.

## 2. *Hearing Request for Reimbursement of Jake's KCS Tuition*

Although the Procedural Safeguards Notice is not entirely clear regarding reimbursement for "related services," the notice is written in an easily understandable manner with respect to reimbursement for private school tuition. As discussed above, the term "costs of private placement" as used in the notice

---

[5] (...continued)
*Spiegler v. District of Columbia*, 866 F.2d 461, 467 (D.C. Cir. 1989) (requiring "clear" notice for a 30-day statute).

[6] Defendant states it its Memorandum in Opposition that Plaintiffs were represented by counsel, but sets forth no evidence to support the claim.  *See* Def's. Mem. in Opp. at 22.

certainly includes the cost of private school tuition.  Plaintiffs received the required notice with respect to requesting a hearing for reimbursement of Jake's KCS tuition.  The court DENIES Plaintiffs' motion with respect to reimbursement for Jake's private school tuition.

The court next considers Plaintiffs' claims that the ninety-day limitations period in HRS § 302A-443(a)(2) should not apply to their request for reimbursement (as to Jake's private school tuition).

## C.   The Ninety-Day Limitations Period Bars Plaintiffs' Request for Reimbursement of the Private School Tuition

Plaintiffs argue that the ninety-day statute of limitations should not apply because (1) the limitations period has not been triggered; (2) the shortened statute of limitations was applied retroactively; and (3) equitable doctrines apply. The court addresses each argument in turn.

### 1.   *Plaintiffs Did Not File Within Ninety Days as Required*

The Hearings Officer concluded that Plaintiffs failed to file within ninety days of a "unilateral special education placement," as required by HRS § 302A-443(a)(2).  Plaintiffs claim that there was never a "unilateral special education placement" because Jake was placed at KCS pursuant to the April 2005 decision and the IDEA's stay-put provision.  Defendant claims that a unilateral

placement occurred on August 2, 2005 when the Plaintiffs rejected the offer of a FAPE, or at the latest, on August 22, 2005 when classes began at KCS.  The Hearings Officer concluded that a unilateral special education placement occurred on August 22, 2005, triggering the ninety-day limitations period.[7]

Because the phrase "unilateral special education placement" is not defined by statute, the court reviews its plain meaning.  *See In Re Waiola O Molokai*, 103 Haw. 401, 422, 83 P.3d 664, 685 (2004) ("In construing statutes, we have recognized that our foremost obligation is to ascertain and give effect to the intention of the legislature, which is to be obtained primarily from the language contained in the statute itself.") (Citations omitted.)  The phrase is not ambiguous; read literally, a unilateral special education placement occurs when one party unilaterally (i.e., without the consent or agreement of the other party) enrolls the student in a special education program.  Plaintiffs, without the consent or agreement of the DOE, enrolled their son at KCS and continued his related services.  DOE did not consent to this placement, with or without the IDEA's stay-

_____

[7] The Hearings Officer found that Plaintiffs "unilaterally placed Student at KCS for the 2005-2006 school year" and rejected Plaintiffs' argument that Jake was placed at KCS pursuant to the previous decision and the IDEA stay-put provision.  ARA at 136.  The Hearings Officer noted that Jake was too old for preschool, so he could not attend Kamaaina Kids for 2005-2006, but that there was no agreement between the parents and DOE to allow Jake to attend KCS.  *See id.*

put provision.  Jake's enrollment at KCS was a unilateral special education

placement.

Further, Plaintiffs were told that the DOE considered their rejection

of the IEP a unilateral placement.  Principal Miyasato's letter dated August 4,

2005 plainly informed Plaintiffs, "your decision to place your son at Kaimuki

Christian School constitutes a unilateral placement."  ARA at 39.  Plaintiffs were

reasonably informed that the DOE considered this a unilateral placement, even

though Miyasato's letter referred to a "unilateral placement" and not a "unilateral

special education placement," as used in HRS § 302A-443(a)(2).

Plaintiffs next unconvincingly argue that there has been no "unilateral

special education placement" because Jake is not in a "special education" school,

since he is in the regular education curriculum at KCS.  The court is not

persuaded.  Although Jake is not in a DOE-run special education program and

participates in the general education curriculum at KCS, he continues to be

eligible under the IDEA, seeks KCS tuition reimbursement, and receives the same

"related services" provided in the April 2005 hearings officer's decision.

The court concludes that the enrollment in KCS was a unilateral

special education placement, which triggered the ninety-day limitations period in

HRS § 302A-443(a)(2).  Plaintiffs received the Procedural Safeguards Notice with

18

the July 22, 2005 IEP and again on August 4, 2005 with Principal Miyasato's

letter, but did not file a request for an impartial hearing until December 22, 2005.

Whether measured from the date of the second notice (August 4, 2005), or the date

used by the Hearings Officer (on August 22, 2005 when classes began at KCS),

Plaintiffs did not file their request within ninety days.

### 2.     *HRS § 302A-443 Was Not Applied Retroactively*

Plaintiffs next argue that unilateral private placement occurred (if at

all) on June 9, 2005[8] -- before the June 24, 2005 effective date of Act 158 -- and

that the Act's shortened statute of limitations was applied retroactively.  Even

assuming that June 9, 2005 is the operative date, Plaintiffs' retroactivity claim

fails.  The ninety-day time limit did not begin to run against Plaintiffs prior to the

statute's date of enactment (June 24, 2005), undermining any claim that the statute

has been applied retroactively.[9]  *See Calderon v. United States District Court for*

*the Central District of California*, 128 F.3d 1283, 1286-87 (9th Cir. 1997),

---

[8] Jake attended Kamaaina Kids preschool from August 23, 2004 to June 8, 2005 at public expense.  The school year ended on June 8, 2005 and, as of June 9, 2005 Jake could not remain in preschool.

[9] Thus, no request for a due process hearing filed on or before September 22, 2005 (ninety days after enactment) would be untimely.  *See Block v. North Dakota ex rel. Bd. of Univ. & Sch. Lands*, 461 U.S. 273, 286 n.23 (1983).

*overruled on other grounds,* 163 F.3d 530 (9th Cir. 1998) (holding that the one-year deadline imposed by the Antiterrorism and Effective Death Penalty Act ("AEDPA") for filing of habeas petitions could not begin to run prior to AEDPA's enactment and allowing a grace period equal to the new one-year limitation period).

Further, the statute was not applied retroactively in this case. Plaintiffs received actual notice of the ninety-day limitation period in July and August 2005 -- after the effective date of the statute -- and the statute would not begin to run until they received that notice. HRS § 302A-443 was not applied retroactively.[10]

### 3.    *Equitable Tolling and Equitable Estoppel Do Not Apply*

Plaintiffs next urge the court to apply a two-year statute of limitations based on the equitable tolling or equitable estoppel doctrines. The court concludes that neither equitable tolling nor estoppel is warranted in this case.

### a.    *Equitable tolling*

"Equitable tolling focuses on whether there was excusable delay by the plaintiff and may be applied if, despite all due diligence, a plaintiff is unable to obtain vital information bearing on the existence" of his or her claim. *Huseman v.*

---

[10] Because the statute of limitations was not applied retroactively to Plaintiffs, the court rejects their related due process and equal protection claims.

*Icicle Seafoods, Inc.*, 471 F.3d 1116, 1120 (9th Cir. 2006) (citations and quotation signals omitted).

Plaintiffs' equitable tolling claim (unlike their equitable estoppel claim) is founded upon their conduct and due diligence.  Plaintiffs have set forth no evidence that they diligently pursued their right to request an impartial hearing.  To the extent Plaintiffs claim that the Procedural Safeguards Notice was confusing, the notice was not confusing with respect to requesting due process hearings for reimbursement of tuition, as discussed *supra*.  Under these circumstances, Plaintiffs have not shown the requisite due diligence for equitable tolling.

> b.    *Equitable estoppel*

Equitable estoppel focuses on the actions taken by the Defendant in preventing Plaintiffs from filing suit.  The court considers the following, non-exhaustive list of factors:

> (1) the plaintiff's actual and reasonable reliance on the defendant's conduct or representations, (2) evidence of improper purpose on the part of the defendant, or of the defendant's actual or constructive knowledge of the deceptive nature of its conduct, and (3) the extent to which the purposes of the limitations period have been satisfied.

*Johnson v. Henderson*, 314 F.3d 409, 414 (9th Cir. 2002) (citation omitted).

Equitable estoppel is not warranted here because there is no evidence that

Plaintiffs relied on Defendant's conduct or representations (since no such representations are alleged), or improper purpose on the part of the Defendant, or of the Defendant's actual or constructive knowledge of the deceptive nature of its conduct.  Equitable estoppel applies "if the defendant takes active steps to prevent the plaintiff from suing in time." *Id.* (citations omitted).  Plaintiffs do not assert that the DOE took "active steps" to prevent them from suing on time.  The DOE did not withhold or provide false information to Plaintiffs regarding the applicable deadlines.

In sum, Plaintiffs did not request a due process hearing within ninety days of receiving notice, the statute of limitations was not applied retroactively, and equitable doctrines do not apply.  Plaintiffs are barred by the ninety-day limitations period from seeking reimbursement for Jake's KCS tuition.

## D.    The IDEA's "Stay Put" Provision

Section 1415(j) of the IDEA provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."  20 U.S.C. § 1415(j).  This section, referred to as the "stay put" provision, requires the DOE "to maintain a disabled child's educational program until any placement dispute between the

22

agency and the child's parents is resolved." *Johnson ex rel Johnson v. Special Educ. Hearing Office,* 287 F.3d 1176, 1179 (9th Cir. 2002).[11]

The parties disagree over Jake's "then-current educational placement" and his placement during the pendency of these proceedings. "Neither the statute nor the legislative history provides guidance for a reviewing court on how to identify 'the then current educational placement.'" *Ms. S. ex rel G. v. Vashon Island Sch. Dist.*, 337 F.3d 1115, 1133 n.22 (9th Cir. 2003), *superseded on other grounds by* 20 U.S.C. 1414(d)(1)(b) (citation omitted). In the Ninth Circuit, "the

---

[11] The relevant regulation promulgated under this section states:

34 C.F.R. § 300.514 Child's status during proceedings.

(a) Except as provided in § 300.526, during the pendency of any administrative or judicial proceeding regarding a complaint under § 300.507, *unless the State or local agency and the parents of the child agree otherwise, the child involved in the complaint must remain in his or her current educational placement.*

(b) If the complaint involves an application for initial admission to public school, the child, with the consent of the parents, must be placed in the public school until the completion of all the proceedings.

(c) If the decision of a hearing officer in a due process hearing conducted by the SEA or a State review official in an administrative appeal agrees with the child's parents that a change of placement is appropriate, that placement must be treated as an agreement between the State or local agency and the parents for purposes of paragraph (a) of this section.

34 C.F.R. § 300.514 (2006) (emphasis added).

current educational placement is typically the placement described in the child's most recently implemented IEP." *Johnson ex rel Johnson*, 287 F.3d at 1180.

Jake's placement during the pendency of these proceeding is the placement described in his most recent IEP, which was implemented by the Hearings Officer's April 2005 Order. The Hearings Officer ordered that Jake attend Kamaaina Kids preschool and receive his related services at public expense.[12]

Because Jake is too old to attend preschool, his stay-put placement must be comparable to his placement under the April 2005 Order and must approximate his old IEP (as implemented by the April 2005 Order) as closely as possible. *See Johnson ex rel. Johnson*, 287 F.3d at 1182 (requiring the school district to provide an interim placement "in conformity with" the student's current plan and holding that the school district had "offered comparable placement" to the student); *Ms. S. ex rel G.*, 337 F.3d at 1134 (holding that the "district will satisfy the IDEA if it implements the student's last agreed-upon IEP; but if it is not possible for the new district to implement in full the student's last agreed-upon IEP, the new district must adopt a plan that approximates the student's old IEP as

---

[12] In 2004, the parents unilaterally privately placed Jake at Kamaaina Kids preschool and challenged the IEP, which the hearings officer found failed to provide a FAPE for the 2004-2005 school year and ordered reimbursement for private placement through June 8, 2005.

closely as possible."). *See also McKenzie v. Smith*, 771 F.2d 1527, 1533 (D.C. Cir. 1985) (ordering the school district to place the student in a "similar program" to the one that the student grew out of pending resolution of the administrative proceedings); *Henry v. Sch. Admin. Unit No. 29*, 70 F. Supp. 2d 52, 61 (D.N.H. 1999) ("[Student] is now too old to attend [private middle school].  In such circumstances, a local educational agency must fulfill its stay-put obligation by placing a disabled student at a comparable facility."); *id.* ("[W]here a child cannot remain in his current educational placement, the 'district would be required to maintain the child in an educational program that is substantially and materially the same as the student's placement . . . during the [previous] school year'") (*quoting Letter to Fisher*, 21 IDELR 995 (Jan. 26, 1995)).

The parties have not sufficiently addressed whether Jake's placement at KCS approximates his old IEP (as implemented by the April 2005 Order) as closely as possible.  *See Ms. S. ex rel G.*, 337 F.3d at 1134.  On this record, the court cannot determine whether KCS is comparable to his preschool program at Kamaaina Kids.

With the foregoing analytical framework in mind, the court REMANDS to the Hearings Officer for a determination of Jake's placement during the pendency of these proceedings under the IDEA's stay put provision.

## IV. <u>CONCLUSION</u>

Based on the foregoing, the court GRANTS Plaintiffs' motion as to their due process hearing request for reimbursement of related services and DENIES the motion as to their due process hearing request for reimbursement of KCS tuition.  Accordingly, Plaintiffs are allowed to seek reimbursement for Jake's related services for the 2005-2006 school year; the Hearings Officer shall hold an impartial due process hearing to determine whether the July 2005 IEP offered Jake a FAPE.

Further, the court REMANDS to the Hearings Officer the issue of Jake's placement under the IDEA's stay put provision.

The parties are to contact the court by April 30, 2007 to schedule a status conference to determine whether the case should be closed.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 17, 2007.



J. Michael Seabright
United States District Judge

*Makiko D. et al.. v. State of Hawaii*, Civ. No. 06-00189 JMS/BMK, Order Granting in Part and Denying in Part Plaintiff's Motion for Declaratory Relief